IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**JUDITH M. TAXDAL,**  6:12-CV-00657 RE

        Plaintiff,  **OPINION AND ORDER**

  v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social Security,

        Defendant.

**REDDEN**, Judge:

Plaintiff Judith Taxdal ("Taxdal") brings this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Disability Insurance Benefits. For the reasons set forth below, the decision of the Commissioner is affirmed and this matter is dismissed.

///

1 - OPINION AND ORDER

## BACKGROUND

Born in 1963, Taxdal is a high school graduate with one year of college. Tr. 29-30. She has worked as an electrician, and as an Army helicopter mechanic. Tr. 58. In February 2009, Taxdal filed an application for disability insurance benefits, alleging disability since November 20, 2008. Tr. 139-40. Her application was denied initially and upon reconsideration. After a Jul 2010 hearing, an Administrative Law Judge ("ALJ") found her not disabled. Taxdal's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

## ALJ's DECISION

The ALJ found Taxdal had the medically determinable severe impairments of fibromyalgia, lumbar and cervical strain, and right knee pain. Tr. 13.

The ALJ found that Taxdal's impairments did not meet or equal the requirements of a listed impairment. *Id.*

The ALJ determined that Taxdal retained the residual functional capacity ("RFC") to perform a limited range of light work. Tr. 17.

The ALJ found that Taxdal was not disabled and retained the ability to perform her past relevant work as a recreational vehicle electrician. *Id.*

The medical records accurately set out Taxdal's medical history as it relates to her claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

/ / /

2 - OPINION AND ORDER

## DISCUSSION

Taxdal contends that the ALJ erred by: (1) failing to find additional severe impairments at step two; (2) finding her not fully credible; (3) improperly weighing medical evidence; (4) failing to find that her impairments met or equaled in severity a Listed impairment; and (5) failing to credit lay testimony.

**I. Step Two**

At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert,* 482 US 137, 140-41 (1987). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 CFR § 404.1521(a). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 CFR §§ 404.1521(b); 416.920(c).

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Yuckert,* 482 US at 153-54. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." *See* SSR 85-28; *Yuckert v. Bowen,* 841 F2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and cannot be established on the basis of a claimant's symptoms alone. 20 CFR § 404.1508.

3 - OPINION AND ORDER

The ALJ properly determined that Taxdal had severe impairments at step two and continued the analysis. Any error in failing to identify other limitations as "severe" at step two is therefore harmless. *Lewis v. Apfel,* 236 F.3d 505, 511 (9th Cir. 2001).

## II. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F.3d at 724. *See also Holohan v. Massinari,* 246 F.3d 1195, 1208 (9th Cir 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722. *See also Holohan,* 246 F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." [Footnote omitted.] *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir 1996).

///

4 - OPINION AND ORDER

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423 (d)(5)(A) (1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (l) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom.

*Id.* at 1282.

The ALJ found Taxdal's medically determinable impairments could reasonably be expected to cause her symptoms, but Taxdal was not fully credible to the extent her symptoms are inconsistent with the RFC. Tr. 15.

The ALJ found that Taxdal worked full time as well as a part time job until November 2008, when her full time employer closed. Tr. 16. Taxdal testified she was working part-time as a janitor for an hour and a half to two hours a day. The ALJ stated this "indicates that the claimant was able to work, with her medications, and that she did not stop working full time due to her alleged impairments...." *Id.* Evidence that a claimant has worked, despite her alleged limitations, can be considered in the credibility analysis. *Drouin v. Sullivan,* 966 F.2d 1255, 1258 (9th Cir. 1992). Evidence that a claimant stopped working for reasons other than her impairments is also valid in considering credibility. *Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001). Taxdal testified that she was laid off for absenteeism, but other evidence indicates that the company closed. Tr. 43, 379.

The ALJ properly noted Taxdal's testimony "that she works her part time job so she can keep receiving her unemployment benefits." Tr. 16. The ALJ may reasonably weigh a

5 - OPINION AND ORDER

claimant's secondary gain motivations against her credibility. *Tidwell v. Apfel,* 161 F.3d 599, 602 (9th Cir. 1998).

The ALJ found that Taxdal's activities of daily living were inconsistent with her claims of disabling pain. Tr. 16. The record indicates that Taxal reported, in April 2010, walking a quarter of a mile daily, and doing push ups and weight work several times a week. Tr. 377. However, in the same examination, Taxdal complained of "back pain 10/10, right heel pain 10/10, right ankle pain 9/10 and right forefoot pain under the balls of her feet 9/10. Shoulders bothered her 9/10 and neck bothers her 8/10." Tr. 378. Taxdal's inconsistency is a valid basis for the ALJ to reject her subjective complaints. *Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cir. 2012).

The ALJ properly noted that Taxdal's right foot and ankle pain were not supported by objective medical findings. Tr. 16. The ALJ cited clear and convincing reasons to reject Taxdal's subjective complaints, and that determination is supported by substantial evidence.

### III. The Medical Evidence

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* at 830. The ALJ may reject

6 - OPINION AND ORDER

physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### A. David Clinger, M.D.

Dr. Clinger examined Taxdal in May 2009 and April 2010. Tr. 375-76. In May 2009, Taxdal reported working as an office cleaner 10 hours a week. She took two to six Vicodin per day, ibuprofen twice a day, and methadone. Taxdal was in motor vehicle accidents in 1987 and July 2008 causing increased back and neck pain. Dr. Clinger noted diagnoses of fibromyalgia, depression, headaches, and sinusitis. Tr. 376. He reported that Taxdal could walk five blocks on a normal day, can garden two hours a day, walk a half a mile limited by her back and ankle condition, can stand for one hour and climb four flights of stairs. She could lift and carry 30 pounds, sit and drive for one hour. She had 14 out of 18 points positive for fibromyalgia.

Dr. Clinger concluded:

DISCUSSION:
    Occupational functioning is limited primarily by her ability to
    lift a maximum of 25 pounds and to stand for a maximum of
    30-50 minutes before she sits down. She fits the criteria of
    light physical demand level as described by the U.S. Department
    of Labor with occasional lifting of 20 pounds and frequent lifting
    of 10 pounds. She would also need to avoid recurrent stooping
    and twisting in a worksite situation.

Tr. 399-400.

At the April 2010 examination, Taxdal reported working one and a half jobs. Tr. 377. She felt Vicodin was not controlling her symptoms. Dr. Clinger noted that Taxdal had been on opioids for eight years, and that "[o]ccupationally she limits lifting more than 25 pounds doing

7 - OPINION AND ORDER

office cleaning." *Id.* She was positive on 18 of 18 points for fibromyalgia. Under

"IMPRESSION," Dr. Clinger wrote:

> 1. She is service connected for back condition which is assessed by me as lumbar strain on my evaluation today. She has no significant neurologic, motor or sensory deficits identified.
> 2. She has complex chronic pain most significantly including fibromyalgia which heightens her pain sensitivity as well as being deconditioned and on opioid medications. She has been treated for depression and has had abuse in the past. Her fibromyalgia will significant[ly] affect her reports of pain and pain with motion measurements.
>
> Addendum 06/12/09: Her current back pain problem is more likely than not complex chronic pain syndrome....With currently available information at this time her back strain she sustained while in military service is less likely than not the major component of her current back pain.
>
> Compensation and pension exam 04/09/10: She walks a quarter of a mile in a normal day and three times a week she does fifteen push ups and works out with eight pound dumbbells. She sleeps nine hours a night and has a history of depression. She can walk two to three blocks before she has too much pain in her right foot and ankle. She can stand for a half an hour, climb a maximum of 3-4 flights of stairs limited by right foot and ankle as well as back pain and lift and carry 20 pounds limited by back and shoulder pain. Chief complaint was back pain 10/10, right heel pain 10/10, right ankle pain 9/10 and right forefoot pain under the balls of her feet 9/10. She had a mild limp when she got out of chair which she attributed to her back pain. She could forward bend and touch her toes but could barely put her right forefoot down because of forefoot pain. She could [d]o half a squat limited by knee and back, was significantly connected for right ankle instability and has recurrent strains. The veteran has had progression of pain and tenderness in her right forefoot, right arch, right heel and she also has complex chronic pain syndrome including chronic opioid medications, fibromyalgia, depression and history of abuse, all of which will magnify her perception of pain intensity.

Tr. 377-78.

Dr. Clinger noted Taxdal "states her general health and wellbeing are about average." Tr. 380.

The ALJ cited Dr. Clinger's notes. Tr. 15-16.

Taxdal argues the ALJ erred in three ways regarding Dr. Clinger. First, Taxdal asserts that the ALJ failed to credit Dr. Clinger's May 2009 note that Taxdal could stand for 30-50 minutes before she had to sit down. Second, the ALJ did not address Dr. Clinger's finding that Taxdal suffers from recurrent ankle strain; and third, the ALJ did not address Dr. Clinger's opinion that Taxdal has a chronic complex pain syndrome, including chronic opioid medications, fibromyalgia, depression, and a history of abuse.

Dr. Clinger's notes, read in context, indicate that he considered Taxdal's various impairments and ultimately concluded that she "fits the criteria of light physical demand level," which involves lifting 20 pounds occasionally and 10 pounds frequently, standing or walking for six hours in an eight-hour workday, and sitting for six hours in an eight-hour workday. Tr. 399-400. *See* Social Security Ruling ("SSR") 83-10, *available at* 1983 WL 31251. In addition, Dr. Clinger opined that Taxdal should avoid recurrent stooping and twisting. The ALJ incorporated the light exertional limitation and the stooping limitation in the RFC, but failed to incorporate the twisting limitation. This error was harmless because the ALJ found Taxdal capable of performing her past relevant work as an electrician, which does not require twisting as actually or generally performed. Tr. 169, *Dictionary of Occupational Titles,* #824.681-010. *Carmickle v. Comm'r. Soc. Sec. Admin.,* 533 F.3d 1155, 1162 (9th Cir. 2008)(citing *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ properly considered Dr. Clinger's opinion.

### B. Charles Murphy, M.D.

The ALJ adopted Dr. Murphy's assessment of Taxdal's RFC. Tr. 17. State agency non-examining medical consultants, like Dr. Murphy, are experts in the evaluation of medical issues in disability claims. SSR 96-6p, *available at* 1996 WL 374180 at *2. Their opinions may amount to substantial evidence as long as other evidence in the record supports those findings. *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001). Dr. Murphy's opinion was largely consistent with Dr. Clinger's opinion and is therefore substantial evidence upon which the ALJ properly relied.

Taxdal argues that Dr. Murphy's opinion should be given no weight, in part because Dr. Murphy questioned the validity of Taxdal's fibromyalgia diagnosis. However, the ALJ found fibromyalgia a severe impairment at step two. Taxdal argues the ALJ erred by accepting Dr. Murphy's opinion while disregarding Dr. Clinger. As set out above, the ALJ did not disregard Dr. Clinger, and accepted Dr. Murphy's consistent opinion as to the RFC. The ALJ's interpretation of the evidence was reasonable and supported by substantial evidence. *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001)(citations omitted).

### IV. Lay Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); 404.1545(a)(3); 416.945(a)(3); 416.913(d); *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala,* 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater,* 100 F.3d 1462,

10 - OPINION AND ORDER

1467 (9th Cir. 1996). However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512. The ALJ may also reject lay testimony predicated upon the testimony of a claimant properly found not credible. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

### A. Nick Meller

In April 2009, Mr. Mellor wrote that he had known Taxdal for nine years, and had worked for the same employer. Tr. 204. He noted Taxdal had back pain for which she took medication, and "still has to struggle with her day to day activities at work." *Id.* Taxdal had missed days because of back pain.

### B. Donovan Davis

Mr. Davis wrote, in April 2009, that he had worked with Taxdal since March 2001. Tr. 205. He has seen Taxdal "struggle with some tasks due to a bad back and other injuries." *Id.* Mr. Davis reports that Taxdal's back has gotten worse, and her pain medications "cause her to be groggy and sometimes inattentive at work." *Ibid.*

### C. Elizabeth Holmes

Ms. Holmes wrote, in April 2009, that Taxdal "works daily in extreme physical pain. She has not missed a lot of shifts although she suffers daily." Tr. 206.

### D. Dee Bromley

Ms. Bromley is the General Manager of the cleaning company for which Taxdal works. She writes that Taxdal is "a very hard worker...in spite of the fact that she is always in severe pain and discomfort." Tr. 207. Ms. Bromley notes that at a fourth of July employee picnic Taxdal had a severe pain attack and was unable to move or be touched for nearly an hour.

### E. Cheryl Williams

Ms. Williams completed a statement in April 2009 in which she states that Taxdal's back has gradually gotten worse since 2001. Tr. 209. Ms. Williams said that Taxdal tried to increase her work hours but had to drop those hours. Ms. Williams testified before the ALJ that she works with Taxdal, and she knows that Taxdal is in pain because she holds her back, cries sometimes, and sometimes at work has to lay down. Tr. 51. Williams and Taxdal have been roommates since 2001. Williams testified that Taxdal tries to do housework, but doesn't do as much as she used to. Tr. 53. She testified Taxdal does some vacuuming, dishwashing, and cooking, but can't stand for any length of time.

///

///

///

///

///

///

///

///

///

///

///

///

12 - OPINION AND ORDER

The ALJ noted the third party statements, and Ms. Williams's testimony, and their descriptions of intolerable pain and pain "attacks" without warning. Tr. 15. The ALJ properly noted that the lay witness testimony was inconsistent with the medical evidence. Tr. 16. This is a germane reason to reject the testimony of Ms. Holmes and Ms. Bromely, who specifically describe sudden onset of incapacitating pain.

Any error in evaluating the remaining lay witness testimony is harmless because "the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims." *Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cir. 2012).

## CONCLUSION

The Commissioner's decision that Taxdal was not disabled, and is not entitled to DIB under the Social Security Act, is based upon the correct legal standards and supported by substantial evidence. The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this 22 day of May, 2013.

JAMES A. REDDEN
United States District Judge